UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ROCKY MOUNTAIN LABORATORIES, LLC, a Utah foreign limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PRIME LABS, LLC, a Utah domestic limited liability company, and MAKO MEDICAL LABORATORIES, LLC, a Utah foreign limited liability company,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [12] DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:26-cv-00241-DBB-DBP<br><br>District Judge David Barlow |

Before the court is Mako Medical Laboratories, LLC's ("Mako") Motion to Dismiss

Plaintiff Rocky Mountain Laboratories, LLC's ("RML") Complaint.[1]

## BACKGROUND

This case involves allegations that Defendants used deceptive trade practices and

defamatory communications to undermine Plaintiff's reputation and business opportunities.

Plaintiff alleges the following:

Plaintiff is a laboratory that provides specialized testing services to healthcare providers

in Utah and Idaho.[2] Defendants Prime Labs, LLC ("Prime Labs") and Mako are Plaintiff's

competitors in the clinical laboratory market.[3] Prime Labs operates in Utah and competes

---

[1] Motion to Dismiss ("MTD"), ECF No. 12, filed May 5, 2026.
[2] Compl. ¶ 1, ECF No. 1, filed Mar. 23, 2026.
[3] *Id.* ¶ 2.

1

directly with RML for laboratory testing business in Utah.[4] Mako,[5] which is a citizen of North Carolina for jurisdictional purposes, owns Prime Labs.[6] In mid-2025, Prime Labs was experiencing significant financial distress.[7] Internal communications between Prime Labs employees show concern that Mako would not continue to fund Prime Labs' losses.[8]

Prime Labs' leadership developed a strategy to "dethrone RML and take over the [laboratory testing] market" in Utah by undermining RML's reputation with healthcare providers and facilities.[9] In late 2025, Defendants began distributing letters to assisted living facilities and healthcare providers claiming that RML was engaged in false billing practices.[10] The letters were designed to give the appearance that they originated from a government organization, and they included the name and title of a special agent that had previously interacted with Prime Labs, though the phone number listed did not belong to the agent.[11] Prior to the letters being mailed, Prime Labs employees contacted the healthcare facilities and notified them that they would soon receive letters warning of RML's alleged fraud.[12]

After the letters were discovered, the Utah Attorney General's Office began to investigate the matter.[13] As part of the investigation, law enforcement seized the cell phone of a Prime Labs employee.[14] It contained communications showing that Prime Labs personnel discussed the

---

[4] *Id.* ¶ 21.
[5] *Id.* ¶ 42.
[6] *Id.* ¶ 9.
[7] *Id.* ¶ 22.
[8] *Id.* ¶ 23.
[9] *Id.* ¶¶ 25–27.
[10] *Id.* ¶ 28.
[11] *Id.* ¶¶ 28–37.
[12] *Id.* ¶¶ 38–39.
[13] *Id.* ¶ 44.
[14] *Id.* ¶¶ 45.

creation and distribution of the letters months before they were mailed.[15] Specifically, Prime Labs employees discussed how to make the letters appear more official and how to increase revenue following the letter campaign.[16] Plaintiff also alleges on information and belief that Mako conspired with Prime Labs and participated in distributing the letters.[17]

## STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[18] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[20] Conclusory statements and legal conclusions are "not entitled to the assumption of truth."[21]

Generally, "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."[22] "However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on

---

[15] *Id.* ¶ 48.

[16] *Id.* ¶¶ 45–53.

[17] *Id.* ¶ 43.

[18] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (citing *United States ex rel. Reed v. KeyPoint Gov't Sols.,* 923 F.3d 729, 764 (10th Cir. 2019)).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[20] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130–31 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).

[21] *Iqbal*, 556 U.S. at 1951 (emphasis omitted).

[22] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999)).

a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[23] Courts may also consider "documents that the complaint incorporates by reference,"[24] "documents attached as exhibits to the complaint,"[25] and "matters of which a court may take judicial notice,"[26] including "facts which are a matter of public record."[27]

## DISCUSSION

Mako moves to dismiss all claims against it because (1) the Complaint does not state a claim against Mako and (2) the court lacks personal jurisdiction over Mako.[28]

## I.   Failure to State a Claim

Mako first contends that dismissal is proper under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Complaint only includes facts showing Prime Labs' alleged misconduct.[29] Mako argues that Plaintiff improperly groups it with Prime Labs as "Defendants" throughout most of the Complaint and that the only allegations relating specifically to Mako are conclusory.[30] RML responds that the court must consider the Complaint's allegations as a whole.[31] Plaintiff argues that the Complaint includes numerous facts that implicate Mako,

---

[23] *Id*. (quoting *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002)).
[24] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007)).
[25] *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).
[26] *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007).
[27] *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).
[28] MTD 1.
[29] *Id*. at 3.
[30] *Id*. at 7–9.
[31] Opposition to Motion to Dismiss ("Opp'n") 6, ECF No. 18, filed June 9, 2026.

including allegations that Prime Labs depended on Mako for funding and that Mako conspired with Prime Labs.[32]

To survive a Rule 12(b)(6) motion, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33] Conclusory allegations and "formulaic recitations[s] of the elements" of a claim are not entitled to a presumption of truth.[34] In this case, the Complaint asserts numerous specific factual allegations relating to Prime Labs and its employees discussing, planning, and executing the alleged letter scheme. However, the Complaint includes almost no allegations relating to Mako. Aside from jurisdictional allegations, the Complaint only asserts that Mako owns and funds Prime Labs[35] and that "Mako actively conspired with and participated in distributing the fraudulent letters."[36]

The assertions relating to funding do not create a reasonable inference that Mako is liable for the misconduct alleged, even when viewed in the context of the Complaint as a whole. Mere statements that Mako funded a separate entity that allegedly engaged in fraudulent behavior do not allow a reasonable inference that Mako itself engaged in any fraudulent behavior. And the Complaint is devoid of any facts from which it could be reasonably inferred that Mako was involved in planning or executing the alleged letter scheme. Plaintiff argues that the Complaint does specifically allege that Mako participated in the scheme.[37] But RML's assertion that Mako conspired with Prime Labs and distributed the letters is conclusory and is not entitled to a

---

[32] *Id.* at 6–8.
[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[34] *Id.* at 681 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).
[35] Compl. ¶¶ 23–24, 42.
[36] *Id.* ¶ 43.
[37] Opp'n 7.

5

presumption of truth.[38] It is unsupported by the rest of the factual allegations in the Complaint, which relate entirely to actions allegedly taken by Prime Labs and Prime Labs employees rather than Mako.

Plaintiff also argues that the Complaint includes specific factual allegations relating to Mako because it repeatedly alleges that "Defendants"—a term defined to include both Mako and Prime Labs—committed specific acts like designing and distributing the letters.[39] Mako replies that this constitutes impermissible group pleading that improperly attributes Prime Labs' actions to Mako.[40] Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[41] This statement must "inform the defendants of the actual grounds of the claim against them"[42] by stating "what each defendant did to [the plaintiff]; when the defendant did it; [and] how the defendant's action harmed [the plaintiff]."[43] A complaint fails to satisfy this requirement when it brings claims against defendants as an "undifferentiated group" and states allegations that only make sense for certain defendants in that group.[44]

In this case, the "Defendants" group used throughout the Complaint is small, consisting of only two parties. However, even reading the Complaint as a whole in the light most favorable to RML, it fails to state facts sufficient to allege that Mako carried out any of the actions attributed to "Defendants" as a group. For example, the Complaint states that Prime Lab

---

[38] Compl. ¶ 43.
[39] Opp'n 7–8; *see also* Compl. ¶¶ 28, 31, 35, 40.
[40] Reply in Support of Motion to Dismiss ("Reply") 5, ECF No. 26, filed June 23, 2026.
[41] Fed. R. Civ. P. 8(a)(2).
[42] *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).
[43] *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007).
[44] *Snyder v. ACORD Corp.*, No. 1:14-CV-01736-JLK, 2016 WL 192270, at *3 (D. Colo. Jan. 15, 2016), aff'd, 684 F. App'x 710 (10th Cir. 2017).

employees and executives (1) expressed concern about losing Mako's funding,[45] (2) viewed RML as a major competitor,[46] (3) discussed undermining RML to take over the local market,[47] (4) warned healthcare facilities that they would soon receive the letters,[48] and (5) planned to distribute the letters and make them look like official government communications.[49] In contrast, the Complaint fails to allege facts showing any involvement in the letter scheme by Mako. Thus, Plaintiff cannot rely on actions attributed to "Defendants" as a group to state a claim against Mako when the Complaint as a whole only includes facts connecting Prime Labs to those alleged group actions.

This is further reinforced by the affidavits in support of warrants that are referenced throughout the Complaint and which form the basis for many of Plaintiff's factual allegations.[50] Plaintiff includes three affidavits by a special agent with the Utah Attorney General's Office as exhibits to its Complaint[51] and cites to these affidavits for many of its factual allegations.[52] Plaintiff argues that the Complaint ties Mako to the alleged misconduct because the Attorney General's investigation concluded that Mako participated in distributing the letters.[53] But this argument is not supported by the affidavits themselves or by the factual allegations in the

---

[45] Compl. ¶¶ 23–24.

[46] *Id.* ¶ 25.

[47] *Id.* ¶¶ 26–27.

[48] *Id.* ¶ 38.

[49] *Id.* ¶¶ 46–50.

[50] The court may consider these affidavits on a motion to dismiss because they are incorporated by reference in the Complaint and are attached to the Complaint as Exhibits. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

[51] Compl. ¶¶ 23, 34, 51; *see also*; Affidavit for Search Warrant (Dec. 23, 2025) ("First Affidavit"), ECF No. 3-3, filed Mar. 24, 2026; Affidavit for Search Warrant (Jan. 28, 2026) ("Second Affidavit"), ECF No. 3-1, filed Mar. 24, 2026; Affidavit for Search Warrant (Feb. 6, 2026) ("Third Affidavit"), ECF No. 341, filed Mar. 24, 2026.

[52] *See* Compl. ¶¶ 23–26, 34–40, 51–52.

[53] Compl ¶ 43; Opp'n 17.

Complaint. Notably, the affidavits either do not mention Mako at all[54] or only mention Mako in the context of internal Prime Labs communications expressing concern about losing funding.[55] Several times, the Complaint cites to the affidavits to support allegations relating to "Defendants" as a group, but the cited pages only discuss actions allegedly taken by Prime Labs employees.[56] In the absence of sufficient facts in the Complaint giving rise to a plausible inference that Mako committed the acts generally attributed to "Defendants," such allegations cannot form the basis for a claim against Mako.

After excluding conclusory allegations that Mako conspired with Prime Labs and group allegations about "Defendants" that cannot be attributed to Mako based on the facts pled, the Complaint does not allow for a reasonable inference that Mako is liable for the misconduct alleged. In the absence of factual allegations tying Mako to the alleged letter scheme, the Complaint fails to state a plausible claim against Mako.

## II.      Personal Jurisdiction

Mako also argues that the court lacks personal jurisdiction over it.[57] In its Complaint, RML asserts that the court has personal jurisdiction over Mako under Utah's long-arm statute because Mako has purposefully availed itself of the Utah forum.[58] A court may "exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state."[59] The minimum contacts standard may be

---

[54] *See generally* First Affidavit.
[55] *See* Second Affidavit 5; Third Affidavit 5.
[56] *See* Compl. ¶¶ 40–41, 52.
[57] MTD 9.
[58] Compl. ¶ 12.
[59] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1979)).

8

satisfied by showing either general or specific personal jurisdiction over the defendant.[60] Only specific jurisdiction is at issue here.[61]

Specific jurisdiction exists when a defendant "purposely directed his activities at residents of the forum" and the case "arise[s] out of or relate[s] to those activities."[62] In other words, a court must first "consider whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'"[63] Then, if the defendant's actions create sufficient minimum contacts, the court must "consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.[64] "Plaintiff carries the burden of establishing personal jurisdiction over Defendant."[65] But, at the motion to dismiss stage, "plaintiffs need only make a *prima facie* showing of personal jurisdiction," and the court takes as true any "plausible, non-conclusory, and non-speculative . . . facts alleged in plaintiffs' complaint."[66]

Here, Plaintiff argues that it has made a prima facie showing of personal jurisdiction by alleging that Mako "participated in a tortious campaign directed at Utah providers."[67] However, as already discussed, the Complaint fails to allege any nonconclusory facts showing that Mako

---

[60] *Id.* at 1090–91.

[61] Opp'n 13–15.

[62] *SelectHealth, Inc. v. Risinger*, 18 F. Supp. 3d 1268, 1272 (D. Utah 2014) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).

[63] *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005) (quoting *World–Wide Volkswagen,* 444 U.S. at 297).

[64] *Id.* at 1276–77 (quoting *OMI Holdings*, 149 F.3d at 1091).

[65] *SelectHealth*, 18 F. Supp. 3d at 1271.

[66] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (emphasis in original).

[67] Plaintiff briefly states that Mako's "ownership of two Utah entities" subjects it to general jurisdiction in Utah. However, Plaintiff does not cite any authority or provide an analysis in support of finding general jurisdiction, instead declaring that it will show specific jurisdiction and that "RML does not rely on Mako's ownership of Prime Labs *alone* to establish personal jurisdiction." Opp'n 13–14 (emphasis in original). Accordingly, the court will only consider Plaintiff's arguments relating to specific jurisdiction.

was involved in the alleged letter scheme. Each cause of action in the Complaint arises out of the alleged preparation and dissemination of the fraudulent letters, as well as other communications and representations related to those letters.[68] Thus, even taking as true all the well-pled facts in the Complaint, Plaintiff has not shown that Mako purposefully directed its activities towards Utah in a way giving rise to the allegations in this case. Accordingly, Plaintiff has not met its burden of establishing this court's personal jurisdiction over Mako.

## III.    Jurisdictional Discovery

Plaintiff next argues that, in the event the court finds that it has not made a sufficient prima facie showing of personal jurisdiction over Mako, it should be permitted to conduct "targeted jurisdictional discovery into Mako's contacts with Utah and its knowledge, communications, funding decisions, and participation in the false-letter campaign."[69] RML contends that such discovery is necessary here because information relating to Mako's knowledge of and participation in the "false-letter campaign" is uniquely within Mako's possession.[70]

Courts are "vested with broad discretion in deciding whether to allow jurisdictional discovery."[71] Generally, such discovery is appropriate "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."[72] In this case, the request for jurisdictional discovery is not supported. The court did not conclude that it lacks personal jurisdiction over Mako because of disputed facts that must be

---

[68] Compl. ¶¶ 64–126.
[69] Opp'n 23.
[70] *Id.* at 24.
[71] *Dutcher v. Matheson*, 16 F. Supp. 3d 1327, 1339 (D. Utah 2014), *aff'd*, 840 F.3d 1183 (10th Cir. 2016).
[72] *Id.* (quoting *Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. App'x. 86, 103 (10th Cir. 2012) (unpublished)).

10

resolved; the court found that it lacked personal jurisdiction because the Complaint is devoid of any non-conclusory factual allegations tying Mako to the acts underlying Plaintiff's causes of action. For this same reason, even if the court did have personal jurisdiction over Mako, the Complaint would still fail to state a claim against it. And, in any event, the jurisdictional discovery Plaintiff seeks is massive and not reasonably tailored.[73] Thus, Plaintiff has failed to establish the need for and propriety of the jurisdictional discovery it seeks.

## IV.    Leave to Amend

Finally, Plaintiff argues that, if the court grants the motion to dismiss, Plaintiff should be granted leave to amend the Complaint under Rule 15(a)(2).[74] The court recognizes that "leave to amend should be freely granted when justice requires."[75] However, Plaintiff's request in the alternative for leave to amend does not comply with the District of Utah Local Rules, which require a party moving for leave to amend under Rule 15(a)(2) to attach redlined and clean versions of the proposed amended pleading as exhibits to its motion.[76] Therefore, Plaintiff's request for leave to amend its Complaint is denied at this time, but Plaintiff may submit another motion for leave to amend that complies with DUCivR 15-1. Additionally, as long as it is in compliance with court-established deadlines and any extensions, Plaintiff may move for leave to amend at a later date as discovery against Prime Labs advances.

**ORDER**

Defendant Mako's [12] Motion to Dismiss is GRANTED, and the claims against Defendant Mako are DISMISSED WITHOUT PREJUDICE.

---

[73] Opp'n 20.
[74] *Id.* at 21.
[75] *Moya v. Garcia*, 895 F.3d 1229, 1239 (10th Cir. 2018).
[76] DUCivR 15-1(a).

11

Signed July 27, 2026.

BY THE COURT

_____

David Barlow
United States District Judge